Robert M. Yaspan (SBN 051867)
LAW OFFICES OF ROBERT M. YASPAN
21700 Oxnard Street, Suite 1750
Woodland Hills, California 91367
Telephone: (818) 905-7711
Facsimile: (818) 501-7711

*General Counsel for Creditors*

## UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA - NORTHERN DIVISION

| | |
|---|---|
| IN RE: | ) Chapter No.: 7 |
| | ) |
| Michael I. Gauss | ) Case No.:  9:20-bk-11522-MB |
| | ) |
| Alleged Debtor | ) PETITIONING CREDITORS' OPPOSITION |
| | ) TO ALLEGED DEBTOR'S MOTION TO |
| | ) DISMISS INVOLUNTARY PETITION AND |
| | ) AWARD FEES, COSTS AND SANCTIONS |
| | ) PURSUANT TO 11 U.S.C. § 303(i) |
| | ) |
| | ) |
| | ) Date:    February 19, 2021 |
| | ) Time:    11:30 a.m. |
| | ) Place:   Courtroom 201 |
| | )             1415 State Street |
| | )             Santa Barbara, CA 93101 |
| | ) |

1

# TABLE OF CONTENTS

I.      INTRODUCTION……………………………………………..    2

II.     STATEMENT OF FACTS…………………………………….    4

        A.  Gauss………………………………………………………    5

        B.  Rainier AG…………………………………………………..    7

        C.  Rasel, Ltd……………………………………………………    8

        D.  Consul Group RE 2021………………………………………    9

        E.  The Khovratov Petitioners………………………………….    13

III.    POINTS AND AUTHORITIES…………………………………    15

        A.  The Gauss Declaration Fails to Provide any Useful Evidence….    16

        B.  The Motion to Dismiss Cannot Resolve This Case……………    19

        C.  This Case Should Not be Dismissed Based Upon
            Alleged Rule Violations………………………………………    20

        D.  Gauss Must be Ordered to Answer and Provide a List of
            Creditors so That the Petitioning Creditors Have an
            Opportunity to Conduct Discovery and All of the
            Creditors Have an Opportunity to File Joinders…………………    21

        E.  The Voluntary Dismissal of the Prior Consul Action
            Simply Confirms the Difficulty in Holding
            Gauss Accountable……………………………………………    21

IV.     CONCLUSION…………………………………………………    22

i

# TABLE OF AUTHORITIES

B.D.W. Associates, Inc. v. Busy Beaver Building Centers, Inc.,
865 F.2d 65 (Third Cir. 1989). ............................................................ 16

In re Bishop, Baldwin, Rewald, Dillingham & Wong,
779 F.2d 471 (Ninth Cir. 1985) ......................................................... 19

Consul v. Zinchenko,
USDC Case No. 2:19-cv-01254-JAK(Ex). ............................................. 13

In re Kidwell,
158 B.R. 203 (Bankr. E.D.Cal. 1993)................................................... 13

In re McGraw,
2007 WL 1076690 (Bkr.Ct. N. D. Alabama. 2007) .................................. 21

In re McIntyre Building Company Inc., 2
011 WL 1434691 (Bkr.Ct. M. D. Alabama. 2011)................................... 21

In re QDos, Inc.,
607 B.R. 338 (B.A.P. Ninth Cir 2019)................................................. 19

In re Quality Laser Works,
211 B.R. 936 (9th Cir. B.A.P. 1997)................................................... 19

## STATUTES AND CODES

11 U.S.C. § 303(i) ........................................................................ 2

Bankruptcy Court Rule 7007.1(a)...................................................... 3,20

Petitioning Creditors  Rasel, Ltd. ("Rasel"), Consul Group RE 2021, S.R.L. ("Consul"), NEEW TNG fka RSW Investments Group Ltd (NEEW"), SWIG America Consulting, LLC ("SWIG AMERICA"), Arteam Consult, Ltd ("Arteam"), Genius of Wealth, LLC ("Genius"), and SWIG INTERNATIONAL Ltd ("SWIG INTERNATIONAL") (collectively "Petitioning Creditors") hereby submit their opposition to Alleged Debtor's Motion to Dismiss Involuntary Petition and Award Fees, Costs, and Sanctions Pursuant to 11 U.S.C. § 303(i) (the "Motion"); Declaration of Michael Guss in Support Thereof [Docket No. 7] as follows:

## I.    **INTRODUCTION**

Putative Debtor Michael I. Gauss aka Michael Gauss aka Michael I. Syroejine, Michael Ivan Syroejine, Mikhail Syroetine, Michael Syrojeschin, Mikhail Syrojeschin. Mikhail Syroejin, Mikhail Gass, Michael Gauss, Michael Guss, Mikhail Gauss, and Michael Fuss ("Gauss") is a sophisticated international fraudster and criminal who utilized a group of corporate shell entities as well as human shills, that on the surface appear to be legitimate, to convert money and stock assets from the unaware to his own personal use.

The Court should note that the Motion is a motion to dismiss which should be decided on the face of the Petition [docket 1] ("Petition") and the Declaration of Michael Goss attached to the Motion ("Gauss Dec") should be ignored.  The Petition was filed on the official form with all necessary information provided and all applicable boxes checked.  As such, Petition Creditors have proved their prima facia case and the Motion should be denied on those grounds alone.

However, to the extent the Court considers the Gauss Dec, Petitioning Creditors have provided the Declaration of Mo Jacob ("Jacob") et cetera filed concurrently herewith ("Jacob Dec") and the Declaration of Aigerim Berekesheva ("Berekesheva") et cetera filed concurrently herewith ("Berekesheva Dec") to provide the Court with more and accurate facts about this

case.  These declarations can also be considered as offers of proof as to what the Petition Creditors will be proving at trial.

As an experienced criminal and fraudster, Gauss directly or more often in the background using shills lures his victims into depositing funds and stock with a Swiss company named Rainier AG ("Rainier" or "Rainier AG") which claims to be a licensed broker as well as other Gauss associated companies many of which are located overseas.  See, Request for Judicial Note et cetera filed concurrently herewith ("RJN"), Exhibits A and D.  The funds sometimes end up going directly to other entities and/or are only held by Rainier AG for a short time, if at all.

The money is disbursed to Gauss or his entities and the stock is sold through a number of stock exchanges.  False reports are submitted to the victims to cover up trades and transfers of the assets and eventually everything disappears and is ultimately converted to Gauss' benefit and use.  This same pattern of behavior was used against each of the Petitioning Creditors as set forth below.  See, Jacob Dec and Berekesheva Dec.

The involuntary petition filed by Petitioning Creditors against Gauss is based on claims of specific sums of money and stock that were paid to Rainier AG and/or the shell companies that were converted by Gauss' fraud for his personal gains.  The Motion to Dismiss does not effectively dispute the receipt of the money, the use and/or conversion of the money by Gauss.

Rather, the Motion relies mainly on technical issues that are easily correctable and not proper grounds for dismissal.  To the extent the Court has any issues with the signatures or dates, Petitioning Creditors can and will provide corrections.  Petitioning Creditors can provide any required corporate ownership information if necessary.  Again, Bankruptcy Court Rule ("BKR") 7007.1(a) is not a proper ground for dismissal since it is easily correctable and is not a material substantive issue.

The Gauss Dec is a text-book example of incomplete denials that vitiates any possible

3

evidentiary value. Gauss' use of the qualifier "personal" throughout his declaration misses the point. Gauss is an experienced criminal. He avoids having personal interests and instead uses shill and strawmen to do everything. The issue is not whether he owns an entity – that means little since they are all presumably corporate shells with insignificant assets. Rather, the issue is who has control of the entities and have assets been transferred through and/or from the entities. The Gauss Dec entirely fails to provide any useful evidence on any these issues and should be disregarded by the Court.

The voluntary dismissal (without prejudice) of Consul's prior lawsuit confirms the difficulty of holding an international criminal like Gauss accountable. Consul simply could not get complete jurisdiction over the fraud and assets in any one jurisdiction. It was faced with having to bring multiple lawsuits in several jurisdiction and by the time that could be accomplished Gauss had converted the assets. The only way to get jurisdiction over a ghost like Gauss is to get jurisdiction over him personally which has been accomplished in this case.

The Court should order Gauss to answer the Petition and provide a list of his creditors under Bankruptcy Court Rule ("BKR") 1003(b). Any other creditors can then join the case. Gauss will eventually have to appear for a 2004 exam and respond to discovery. A Chapter 7 Trustee can trace control of the assets and turn Gauss over and shake him to see what hidden pocket the assets fall out of. That is why Petitioning Creditors filed this proceeding – for the creditors of Gauss. Gauss's careful and incomplete denials of the fraud in this matter, confirms that he is aware of his precarious position in this case and ultimate liability.

## II.    STATEMENT OF FACTS

This Involuntary Chapter 7 was commenced on December 23, 2020 naming Gauss as the Chapter 7 Debtor. Each of the Petitioning Creditors paid specific money or stock to companies that ultimately lined Gauss' pockets through fraud. The following will set forth some of the more pertinent facts in this regard.

## A.    Gauss.

Gauss has, to say the least, a colorful criminal past.  In 1991 he emigrated from the former Soviet Union.  By 1996, he had pled guilty to money laundering for the Russian mob.  Thereafter, he acquired a small brokerage firm and by 2007 was involved in an NASD enforcement procedure because his felony conviction barred him from registering as a securities broker.  See, Request for Judicial Notice ("RJN"), Exhibit A, NASD Decision, Complaint N. C06040027 February 12, 2007, page 4, FN 4.

Even though he has been barred from registering as a security trader, Gauss operates on an international scale specializing in fraud involving the promotion and sale of stock and other securities.  He is a citizen of the United States residing in Santa Barbara County although at times he claims to reside in Los Angeles County and/or Florida.  He is also purported to be a citizen of Russia or other unknown countries and has numerous contacts with unsavory persons in many parts of the world.  He is known to be a world traveler and uses his multinational identity to promote and cover up his various fraudulent activities.

Gauss utilizes many aliases including those listed above as well as other unknown aliases.  Gauss does business in the United States and throughout Europe which includes the buying and selling of companies and their shares.   In 2007, Gauss was determined to have managed a broker dealer while an unregistered control person by the NASD but that has not slowed him down.  RJN, Exhibit A.

As Gauss could no longer be involved in normal stock trading activities, he turned to deception and shell entities to cover up his involvement.  As described more fully below, Gauss obtained control of and/or formed a number of entities to conceal his identity and conceal the location of the funds and stock that was converted and conceal the fact that Gauss and his shills owned and/or controlled the entities involved in the transfer of funds and stock from their victims.  The victims believed that they had opened an account with a legitimate stockbroker

5

located in Switzerland called Rainer AG.  However, what they actually were dealing with was Gauss and his tangled web of shell entities and bank accounts that were used to make it more difficult to discover the fraud and for the purpose of concealing the assets and prevent their recovery.

In or about 2004 or 2007, Gauss was listed as officer and director of Ezbanc Corp ("Ezbanc") which is an alleged owner of at least one of the bank accounts used by "Rainer AG". Ezbanc is a Florida corporation and has its principal place of business in the State of California and maintains offices in the County of Santa Barbara, State of California. RJN, Exhibit   Ezbanc lists as its agent of service of process in California "Embles Financial, Inc."  Embles Financial is a fictitious business name, or "dba", of Gauss using an address of Santa Barbara California.    A true and accurate copy of the Fictitious Business Name Statement filed with the County of Santa Barbara is attached to the RJN as Exhibit B.

Gauss's shills include, without limitation, the following:

a.       Lidia Zinchenko aka Lidiya Zinchenko, individually and dba Rainier AG ("Lidia") is related to Gaus and/or is married and/or was previously married to him.  She resides in Santa Barbara and used the dba Rainier AG to open a bank account in Santa Barbara. That account  was used to convert and/or conceal some of the funds from the Petitioning Creditors.  A copy of the dba filed by Lidia in Santa Barbara County, California, is attached to the RJN as Exhibit C.  Jacob Dec, paragraph 5.

b.       Gregory Mancuso aka Greg Mancuso ("Mancuso") resides in Texas.  Since 2017, Mancuso is a control person of Heritage Equity Management, LLC ("Heritage") that is located at 330 Spaulding Drive, Penthouse 1, Beverly Hills, California 90212 with a mailing address of 1187 Coast Village Road, #1-465, Montecito, California 93108. Heritage was used as a shell entity for Gauss' fraudulent purposes as set out below.

c.       Lidia also held herself out falsely as a Swiss Trust Company  in order to induce

the Petitioning creditors to invest funds with "Rainier AG". Gauss acting under the names of Embles Financial and Ezbanc, and Mancuso falsely represented himself to be the "President" of Embles Financial even though Embles Financial in reality is simply one of Gauss' dbas.

d.    In February 2010, Gauss acquired control of Omni Ventures, Inc. ("OMNI") a Kansas corporation through shares owned by Globanc Corp. ("Globanc"), another company that was controlled by Gauss. OMNI has been  accused on many websites of participating in pump and dump schemes.   In 2012, Gauss also became a director of OMNI. RJN, Exhibits E, G and H.   A man named "Philippe Hermann" ("Hermann")  is a representative of Rainier AG located in Switzerland. However, he is also an officer of OMNI and has reported its telephone number to be 805-845-7177 on official documents, which is the telephone number for Heritage which is owned by Lidia and associated with Mancuso and Gauss. RJN, Exhibits F and H.

**B.    Rainier AG.**

Rainer AG is purported to be a Swiss company, but in reality, is simply a corporate shell that was acquired by Gauss to provide an appearance of legitimacy to his activities. Prior to November 8, 2017, the purported statutory purpose for Rainier AG was, "Development, production and trading of equipment and systems, in particular for order processing systems for general cargo, collection, billing and sorting; can acquire, encumber and sell real estate." It was not involved in stock trading until Gauss took over control.

In or before 2017, Gauss started to do business as and authorized agent of Rainier AG. Among other business, he executed a stock transfer for a company named Petlife Pharmaceuticals, Inc. as authorized agent for the purchaser, Ranier AG. RJN, Exhibit D, page 50.

Since that time Rainier AG has served as one of the principal conduits used by Gauss to funnel funds and stocks into his control. However, Rainier's license in Switzerland is only as an "asset manager" and Rainier is not authorized in Switzerland to take custody of clients' funds.

In or about May 2017, Lidia registered the fictitious business name of Rainier AG in the County of Santa Barbara and opened a bank account there with Bank of America.    This allowed Gauss to receive and hold funds using Rainier Ag and the dba Rainier AG circumventing any licensing restrictions as well as removing the funds from Switzerland to Gauss' own use and benefit.

**C.    Rasel, Ltd.**

Rasel is a company that provides financial management services and consulting to various entities, including, Consul Group RD 2021 S.R.I. Jacob is the managing member of Rasel, Ltd. ("Rasel") and is familiar with its financial and busines records.   Rasel is a company that provides financial management services and consulting to various entities, including, Consul Group RD 2021 ("Consul"). Jacob Dec, paragraph 2.

Mancuso, acting as one of Gauss's shills, sent an email to Rasel instructing it to Deposit funds into what Mancuso alleged was Rainier AG's bank account located in Switzerland. On October 3 and 4, 2018 Rasel wired $125,000 to what it was informed was Rainier at the following location: "Rainier AG, ABA 026009593, Account XXXX2918". Attached to the Jacob Dec collectively as Exhibit 1 are true and correct copy of the wire transfers sent October 3 and 4, 2018 from the Rasel's bank account. Jacob Dec, Exhibit1.

However, although the receiving account was under the name Rainier AG, it actually belonged to Lidia who was acting as Gauss' shill. Both she and the bank account were actually located in Santa Barbara California. The funds were never transferred to Rainier AG in Switzerland and were converted by Gauss. Once Rasel became aware that the funds had been converted, it made numerous demands for the return of the funds that were refused. RJN, Exhibit 3, Jacob Dec, paragraph 5.

Rainier and Gauss have refused to return Rasel's funds. The amount currently owed to Rasel is the amount of $125,000. Jacob Dec, paragraph 5.

### D.    Consul Group RE 2021.

Consul Group RD 2021 ("Consul") is a limited liability company organized and existing under the laws of Costa Rica, where it has its principal place of business.  The Manager of Consul is Mauricio Lara ("Lara"), an attorney in Costa Rica and citizen of Costa Rica.    Mo Jacob is a management consultant for Consul and is familiar with its financial records.  Jacob Dec, paragraphs 2 and 3.

Following Mancuso's instructions Consul transferred 2,244,839 shares of Gopher Protocol Inc. ("GOPH") stock on or about October 6, 2018, to what it thought was Rainer AG's clearing agent's account.   See, Jacob Dec, paragraph 6, Exhibits 2 and 3.

On October 19, 2018, again following instruction from Mancuso, JIL on behalf of Consul transferred a further 2,400,000 shares in GOPH, to what it thought was Rainer AG's clearing agent's account, a copy of which is attached to the Jacob Dec as Exhibit 4.  The Trading Statement acknowledged receipt of the shares on November 7, 2018 (See Exhibit 3).  See, Jacob Dec, paragraph 7,  Exhibit 3.

On or about November 7, 2018 Consul sent 8,500,000 shares of Mobiquity Technologies, Inc., CUSIP 60743F102, aka Mobiquity Networks to what it thought was Rainer AG's clearing agent's account.  Technically the shares were sent through Continental Stock Transfer & Trust Co. to CEDE & CO for the benefit of Consul.  The Trading Statement acknowledged receipt of the shares on November 7, 2018. See, Jacob Dec, paragraph 8, Exhibit 3.

On October 29, 2018 Rainier AG sent a statement of account to Consul and admitted that it was holding USD $639,783.33 for the benefit of Consul.  See Jacob Dec, paragraph 9, Exhibit 5.

On October 29, 2018 a statement of account was sent to Consul and that admitted that purported "Rainier AG" was holding $639,783.33 for the benefit of Consul.   A true and correct

copy of said statement of account is attached as Exhibit 6. On that date, a request for the withdrawal of $300,000 was made from Plaintiff's account. Mancuso originally rejected the request, but he then approved a withdrawal of $265,000 which was submitted on October 30, 2018. A true and correct copy of the request is attached the Jacob Dec as Exhibit 7. Even so on November 9, 2018, there was a transfer of only $165,000 to Rasel sent by one of Gauss's shill, EZBANC. The notation on the wire transfer referenced a purported loan from Mancuso. A true and correct copy of the wire transfer record is attached to the Jacob Dec as Exhibit 8. The statement of account shows the transfer as a debit on October 29, 2018 of USD $265,000. Neither Consul or Rasel received the remaining $100,000. A true and correct copy of the "Cash Statement for 5-29-2018 to 12-12-2018 is attached to the Jacob Dec as Exhibit 9. See Jacob Dec, paragraph 10 Exhibits 7, 8,and 9.

On or before November 28, 2018, Plaintiff sent a further request for funds to purported "Rainier AG". On November 29, 2018, the request was declined. Thereafter, on December 6, 2018, Consul sent another request for a wire transfer in the total amount of $500,000. Consul was instructed that $200,000 was to be sent for a payment on behalf of a third party and $300,000 was to be sent to Plaintiff. Jacob Dec, paragraph 11.

Consul instructed in an email that of the USD $500,000, USD $200,000 was to be sent for the balance of an alleged third-party agreement and USD $300,000 was to be sent to Consul's consultant, Rasel. On December 7, 2018, Gauss' shill EZBANC sent $300,000 to Rasel on behalf of Consul with another notation that it was a "loan disbursement" from Mancuso. Although the wire was sent from EZBANC., the "cash statement" purportedly from a company named "Rainier AG" shows the debit of $500,000 (See, Jacob Dec, Exhibit 9), but does not itemize the transaction showing that $200,000 was ever sent to a third party. Jacob Dec, paragraph 12.

During this period of time where Gauss refusing to allow Consul access to its money, Consul discovered that its funds were sent Rainier AG's bank account in Switzerland, but rather to a bank account owned by Lidia acting as Gauss's shill. The wire transfer went to "Rainer AG" but the bank acknowledgment that was issued in mid-November 2018 shows that the beneficiary on the account was Lidia. Jacob Dec, paragraph 13. RJN, Exhibit C.

Based on the continuous set of deceptions practiced by Gauss and his shills, it became clear that Consul's funds were not held by Rainier AG but rather by Gauss and his shills through their maze of entities. Jacob Dec, paragraph 14.

As of December 12, 2018, Rainier AG sent a statement to Consul admitting that it owed USD $703,245.28 in cash to Consul, which is labelled as a "Cash Statement". (Exhibit 9). Said statement is incorrect in, among other things, the reference to a USD $265,000 withdrawal on October 29, 2018 is incorrect in that only USD $165,000 was sent to Consul. Thus, the amount held for the benefit of Consul as of December 12, 2018 was actually USD $868,245.28. Jacob Dec, paragraph 15.

A statement to Consul purportedly from "Rainier AG" admitting (when applying the deposits and sales) that it held 2,000,498 shares of GOPH stock and 8,363,028 shares of MOBQ stock for the benefit of Plaintiff as of December 18, 2018. The January 16, 2019 snapshot of Consul's account as found on the purported website for purported "Rainier AG", confirmed the same numbers of shares on hand. A copy of the account snapshot is attached to the Jacob Dec as Exhibit 10. Jacob Dec, paragraph 16

The Depository Trust Company ("DTC") is a recognized agent of the securities industry which issues weekly subscription reports that are relied on by investors and brokers. True and correct examples of those GOPH reports are attached to the Jacob Dec as Exhibits 11, 12, and 13 and true and correct copies of the MOBQ reports are attached to the Jacob Dec as Exhibits 14 and 15. The periods of time covered by reports for GOPH were for January 11, 2019

through January 18, 2019; February 15, 2019 through February 22, 2019; and February 22, 2019 through March 1, 2019; and the MOBQ reports for the week of January 18, 2019 through January 25, 2019 and March 15, 2019 to March 22, 2019. These reports show how many shares of GOPH or MOBQ are at each reporting clearinghouse every day that the market is open. There is a line item for "Bank of New York" ("BNY") and a second line item for BNY's wholly owned subsidiary Pershing Corp ("PC"). Jacob Dec, paragraph 17, Exhibits 11 – 15.

As of March 1, 2019, there was a balance of about 2,000,498 shares of GOPH; 8,363,028 of MOBQ shares, $125,000 that went to LIDIA's account and approximately $800,000 cash from the proceeds of the sales. These numbers are backed up by the weekly subscription reports from the DTC, which show the numbers of shares at each clearing agent on a daily trading day basis. Jacob Dec, paragraph 18, Exhibits 11-15.

On January 10, 2019, Lara sent an email to Philippe Hermann, who represented himself as the Manager of the supposed "Compliance Department" of what was purported to be "Rainier AG". Lara stated he was going to be in Switzerland and wanted to meet with Herrmann while he was there. Herrmann responded that all questions should be directed to Mancuso regarding Consul's account and that Rainier did not hold client meetings in its "compliance and back office divisions." Herrmann also claimed to have suspended Consul's account, which was wrongful. Consul could no longer even access its account on the internet. Jacob Dec, paragraph 19.

On January 21, 2019, the attorney for Consul demanded the release of its cash and shares. A copy of the demand is attached as Exhibit 16. On January 23, 2019, the purported corporation calling itself "Rainier AG" replied by email refusing to comply. On January 23, 2019 Consul, made a further demand without reply. A copy of which was attached to the Jacob Dec as Exhibit 18. Jacob Dec, paragraph 20, Exhibit 18.

After multiple demands, eventually a lawsuit was filed in the United States District Court by Consul against Gauss, the alleged Rainier AG, among others, entitled <u>Consul v. Zinchenko</u>, USDC Case No. 2:19-cv-01254-JAK(Ex).  The case was voluntary dismissed without prejudice by Consul could not get complete jurisdiction over the fraud and assets in any one jurisdiction.  It was faced with having to bring multiple lawsuits in several jurisdiction and by the time that could be accomplished Gauss had converted the assets.  Jacob Dec, paragraph 21.

E.    **The Khovratov Petitioners.**

Andrei Khovratov ("Khovratov") is the manager and owner of NEEW TNG fka RSW Investment Group ("NEEW TNG") as well as numerous other companies that do worldwide investing. Declaration of Aigerim Berekesheva ("Berekesheva") filed concurrently herewith ("Berekesheva Dec"), paragraph 2.   Ms. Berekesheva is an attorney and is a legal and management consultant for Khovratov and the Khovratov Petitioners (defined below) is familiar with their financial records and their dealing with Gauss and his entities.

In or about 2018, NEEW TNG hired Evgeniy Kabanov ("Kabanov") as a manager regarding crypto-currency - ICOs, tokens, and acquiring bank assets.  Thereafter, Kabanov introduced Khovratov to Gauss as his partner who had a great deal of knowledge and experience in the financial markets. As Khovratov was interested in owning a bank, Kabinov represented that Gauss was aware of a bank named Migom Bank Ltd ("Migom") in Dominica that could be acquired for $3,000,000 . Beginning early in 2019, Khovratov's entities, NEW TNG, SWIG America Consulting, LLC. ("SWIGA"), Arteam Consult, Ltd. ("Arteam"), Genius of Wealth, LLC ("GW"), and SWIG International, Ltd. (collectively the "Khovratov Petitioners") began forwarding funds to Rainier AG to be used towards the purchase. Berekesheva Dec, paragraph 3.

1    By the spring of 2019, NEW TNG started to use some services from Gauss' companies.

2   These companies included, Rainier AG and Rainer Advisory Group ltd. of England and Wales

3   ("RAG"). Gauss represented that Migom was an up-and-coming bank that had a lot of growth

4   potential. The Khovratov Petitioners continued to forward funds to Gauss's entities, including

5   Rainier AG, RAG and Heritage, to be used towards the purchase as described below.

6   Berekesheva Dec, paragraph 4.

7

8    Khovratov decided that he would use a holding company called RSW Investment

9   Group, Inc. ("RSW") which later became NEEW TNG to acquire Migom. The other

10  Khovratov Petitioners were to share in the ownership based on their contribution. Thereafter,

11  Gauss's company Rainier AG and RSW (NEEW TNG) entered into an agreement for the

12  purchase of Migom. NEW TNG and the other Khovratov Petitioners provided the funds that

13  were to be used for the purchase of Migom as described below. Berekesheva Dec, paragraph 5.

14   In the fall of 2019 Gauss claimed that he had a problem with acquiring Migom because

15  RAG was under investigation and the United Kingdom and the funds forwarded to it had been

16  frozen. Berekesheva Dec, paragraph 6.

17

18   In or about the end of November 2019, Khovratov met personally with Gauss in Paris.

19  A copy of a photo taken at the time showing Khovratov and Gauss is attached to the

20  Berekesheva Dec as Exhibit 1. Gauss told Khovratov that he was waiting for the audit of the

21  bank to be finalized which was to be in the next few weeks. Berekesheva Dec, paragraph 7.

22   In the Spring of 2020 Khovratov and Gauss had a number of phone calls. By this time,

23  Kovratrov simply wanted the money returned to his entities. Gauss made numerous promises

24  to return the funds, but no funds were sent. Berekesheva Dec, paragraph 8.

25

26   In or about July 2020, Migom was sold to another party by Gauss and/or entities

27  controlled by him. To date none of the funds owed to the Khovratov Petitioners has been

28  returned to them. Berekesheva Dec, paragraph 9.

Specifically, the Khovratov Petitioners paid the following amounts to Gauss and his entities for the purchase of Migom none of which was returned:

| | |
|---|---|
| **NEEW NG** | **$4,127,700.27**[1] |
| **SWIGA** | **112,700.00** |
| **Arteam** | **571,615.69** |
| **GW** | **103,200.00** |
| **SWIG** | **329,208.00**    Berekesheva Dec, paragraph 10. |

This Involuntary Chapter 7 was commenced by the petitioning Creditors on December 22, 2020.  Berekesheva Dec, paragraph 11.

### III.    POINTS AND AUTHORITIES

As a general rule, bankruptcy courts are normally not able to dismiss an involuntary petition solely on a motion to dismiss, as motions to dismiss generally are not determined on evidentiary issues.  The Petition filed in this case meets the requirements of the bankruptcy code and establishes a prima facie case.  Further, as set forth more fully below, Gauss's declaration fails to provide any actual admissible evidence since virtually all of his denials are incomplete qualified statements.

Even so, Petitioning Creditors have submitted declarations that provide more information to the Court regarding the facts of this case.  To the extent that the Court does not consider the declarations as evidence, it can consider them as an offer of proof that Petitioning Creditors have the ability to establish their claims.

As such, the Motion to Dismiss must fail and the Court should order Gauss to file an answer and the Court should proceed to trial to determine the involuntary petition on its merits.

---

[1] The funds were sent in the form of English Pound, Euros, and U.S. Dollars.  The conversion rates that were used is set forth in the Petition.

**A.  The Gauss Declaration Fails to Provide any Useful Evidence.**

The Gauss dec is more interesting for what it fails to state rather that what it does. The Gauss Dec is based upon classic incomplete denials.  All of the statements are carefully couched to conceal the actual facts of this case.  As noted above, Gauss' **personal involvement is carefully concealed.  He works through a network of shills and shell entities but is always in control.**  Ultimately, the funds and stock assets were all converted to Gauss's use and control. Hiding behind alleged corporate veils will not protect Gauss particularly on a motion to dismiss. See, B.D.W. Associates, Inc. v. Busy Beaver Building Centers, Inc., 865 F.2d 65 (Third Cir. 1989). [debtor's claims were not subject to bona fide dispute even though they were contingent on piercing corporate veil].  Further, as he has acted through agents, the liability would accrue to him as well.

The Gauss Dec. fails to actually dispute any of the claims.  Rather, the statement are carefully couched to conceal his involvement as follows:

Paragraph 3.  Gauss relies on the qualifier "personally" to claim that he did not **personally** enter into any agreements, contracts, or other business dealings (Gauss Dec., paragraph 3).  He **also admits that he does not know of the basis for the claims** other than Consul's claim in the last sentence.  As such, paragraph 3 vitiates any contention that the claims from the other Petitioning Creditors are subject to dispute since he claims a lack of knowledge.

Paragraph 4.  Gauss simply contends that Rasel never contacted him **claiming that he personally owed it money**.  He fails to deny that an agent or other authorized person contacted him or his agents about money owed.  His denial of owing money to Rasel fails to deny that he or his agents received any money from Rasel.  His denial is ineffective since he fails to provide any defense that would vitiate Rasel's claim.  A conclusory statement of dispute without a legitimate defense is not adequate on a motion to dismiss.  See, B.D.W. Associates, supra at 66 [good faith dispute requires the assertion of a right without fraud or deceit].

Paragraph 5.  Again, Gauss simply contends that NEW TNG never contacted him **claiming that he personally owed it money**.  He fails to deny that an agent or other authorized person contacted him or his agents about money owed.  His denial of owing money to NEEW TNG fails to deny that he or his agents received any money from it.  His denial is ineffective since he fails to provide any defense that would vitiate NEEW TNG's claim.  A conclusory statement of dispute without a legitimate defense is not adequate on a motion to dismiss.  Id.

Paragraph 6.  Again, Gauss simply contends that SWIG LLC never contacted him **claiming that he personally owed it money**.  He fails to deny that an agent or other authorized person contacted him or his agents about money owed.  His denial of owing money to SWIG LLC fails to deny that he or his agents received any money from it.  His denial is ineffective since he fails to provide any defense that would vitiate SWIG LLC's claim.  A conclusory statement of dispute without a legitimate defense is not adequate on a motion to dismiss.  Id.

Paragraph 7.  Again, Gauss simply contends that SWG Int'l never contacted him **claiming that he personally owed it money**.  He fails to deny that an agent or other authorized person contacted him or his agents about money owed.  His denial of owing money to SWG Int'l fails to deny that he or his agents received any money from it.  His denial is ineffective since he fails to provide any defense that would vitiate SWG Int'l claim.  A conclusory statement of dispute without a legitimate defense is not adequate on a motion to dismiss.  Id.

Paragraph 8.  Again, Gauss simply contends that Arteam never contacted him **claiming that he personally owed it money**.  He fails to deny that an agent or other authorized person contacted him or his agents about money owed.  His denial of owing money to Arteam fails to deny that he or his agents received any money from it.  His denial is ineffective since he fails to provide any defense that would vitiate Arteam claim.  A conclusory statement of dispute without a legitimate defense is not adequate on a motion to dismiss.  Id.

Paragraph 9.  Again, Gauss simply contends that Genius never contacted him **claiming**

**that he personally owed it money**.  He fails to deny that an agent or other authorized person contacted him or his agents about money owed.  His denial of owing money to Genius fails to deny that he or his agents received any money from it.   His denial is ineffective since he fails to provide any defense that would vitiate Genius claim.   A conclusory statement of dispute without a legitimate defense is not adequate on a motion to dismiss. Id. Paragraphs 10-12  See, Section E below.

It should be noted that Gauss has incorrectly stated the pleadings and contentions in the prior case.  He also fails to deny that he had control of Rainier AG – rather he simply denies being an owner, officer or director.  As he works using shills, strawmen and shell entities, this denial means nothing. In fact, RJN Exhibit D shows that he does have control over Rainier AG.  A conclusory statement of dispute without a legitimate defense is not adequate on a motion to dismiss.  Id.

Paragraph 13.  As Gauss works through shill and shell entities, his denial of conversion of funds belonging to the Petitioning Creditors is also ineffective.  Undoubtedly, he will contend that the funds he converted actually belonged to his shills and or/or shell entities.

Further, Gauss does not claim he does not know of the Petitioning Creditors or the monies being sought.  Gauss simply says he was never **personally** asked to return the money.  This type of gamesmanship does not show evidence of a bona fide dispute.  Gauss is an experienced criminal who uses shills and strawmen to do everything and the fact the money was invested with him and converted by him is evidence of a bona fide debt.

Ultimately, all of the assets were converted to his use, control, and benefit.  The demands for repayment were also made to him.  He simply does not want to acknowledge that fact.  Further, a personal demand is not necessary when fraud is involved.

Ultimately Gauss' declaration is of no evidentiary value and should be ignored by the Court except to the extent that his careful and incomplete denials confirms his knowledge of his

1    complicity and ultimate liability.

2        **B. The Motion to Dismiss Cannot Resolve This Case.**

3        The Petition filed in this case ("Petition") sets out a prima facie case for an involuntary.

4    *See* <u>In re Quality Laser Works</u>, 211 B.R. 936, 941 (9th Cir. B.A.P. 1997); <u>In re Kidwell</u>, 158

5    B.R. 203, 208 (Bankr. E.D.Cal. 1993). The amounts owed and the information about the eight

6    (8) Petitioning Creditors, their claim amounts and their signatures are set forth on pages 2-7 of

7    the Petition. The petition alleges that the Debtor is not paying its debts as the come due in

8    paragraph 11 on page two of the Petition. The failure to respond to a demand for payment is

9    sufficient to establish a failure to pay debts as the come due. See, <u>In re Bishop, Baldwin,</u>

10    <u>Rewald, Dillingham &Wong</u>, 779 F.2d 471, 475 (Ninth Cir. 1985) [the date of the first creditor

11    demand constituted 'not paying its debts].

12        In the <u>Kidwell</u> case, the court recognized the limitations of motions to dismiss in

13    involuntary proceeding wherein it noted:

14            "[a]lthough permitted, a Rule 12(b)(6) motion is not ordinarily an efficient way to
15            raise the defense. Except in clear cut situations, ruling is generally better postponed
16            until trial. As the motion is always premised on evidence from outside of the
17            pleadings, summary judgment standards are implicated. The evidence usually
18            overlaps other issues on the merits, such as whether debts are being paid as they
19            come due and *which debts are in bonafide dispute.* When evidence pertinent to a
20            Rule 12(b)(6) motion is substantially interwoven with the merits, courts exercise
        their discretion to defer ruling unless a preliminary hearing would conserve time,
        expense and judicial resources." <u>Kidwell</u>, supra at 209.

21

22        Gauss' contention that one or two of the signatures are defective cannot affect the

23    validity of the Petition since it was filed by eight creditors. At this point, one creditor would be

24    sufficient since Gauss does not contend that he has more that twelve creditors and has not

25    provide a list of the alleged creditors under Bankruptcy Court Rule 1003(b). The courts have

26    allowed very liberal joinder in involuntary proceeding and the purpose of the list of creditors is

27    to allow them notice and time to join the case if they so desire.

28

In the case, In re QDos, Inc., 607 B.R. 338 (B.A.P. Ninth Cir 2019, the court noted:

> "In many cases, a bankruptcy court will not be able to dismiss an involuntary case solely on a motion to dismiss. If the petitioning creditor plausibly alleged that they have met the standards, the motion must fail, and the involuntary debtor must answer."

The QDos court went on to rule that the bankruptcy court had errored by dismissing the case on a motion to dismiss. It noted that the failure to require an answer, a list of creditors, and adequate discovery denied the petitioning creditors of an adequate opportunity to make their case.

As noted by the court in Kidwell:

> "The need to defer ruling except in clear-cut instances means that the choice between raising the defense by motion or in the answer has little effect upon how it will be resolved. No bypass of the procedure for listing and notifying creditors to permit joinder should be permitted." Kidwell, supra at 209.

As such, motions to dismiss are not favored as their primary impact is to extend the time to for the ultimate need file an answer to the petition. Such delays run counter to the premise that a prompt determination of whether a bankruptcy case is to proceed is needed and thus should be viewed with caution.

Further, as set forth above, Gauss is a known criminal and fraudster. Any delay in getting him under oath in discovery and a rule 2004 exam will simply give him more time to attempt to cover his tracks. As such, the Court should order Gauss to answer the Petition and and not waste further time on bringing him to account.

**C. This Case Should Not be Dismissed Based Upon Alleged Rule Violations.**

In general, motions to dismiss must be based upon substantive defects in pleadings that cannot be corrected. As such, the Motion fails as it relies mainly on technical issues that are easily correctable and not proper grounds for dismissal. To the extent the Court has any issues with the signatures or dates, Petitioning Creditors can and will provide clarifications or corrections. Petitioning Creditors will also provide any required corporate ownership

information prior to the hearing.  Further, Bankruptcy Court Rule ("BK Rule") 7007.1(a) is

simply not a proper ground for dismissal since it is easily correctable and is not a material or

substantive issue.  See, In re McGraw, 2007 WL 1076690 (Bkr.Ct. N. D. Alabama. 2007)

[considering a motion to dismiss the court disregarded the failure to file a corporate ownership

statement because the statements did not have a substantive effect and were required merely as

aid in determining conflict issues]; see also In re McIntyre Building Company Inc., 2011 WL

1434691 (Bkr.Ct. M. D. Alabama. 2011).

> ### D. Gauss Must be Ordered to Answer and Provide a List of Creditors so That the Petitioning Creditors Have an Opportunity to Conduct Discovery and All of the Creditors Have an Opportunity to File Joinders.

The eight Petitioning Creditors filed the Petition on the bankruptcy court form and

provided the required information and checked the applicable boxes.  As such, they have

met the requirements of the bankruptcy code and establishes a prima facie case.  As

noted in the QDos case, a court should normally deny a motion to dismiss and require a

debtor to answer and provide a list of creditors, and order adequate discovery to allow

petitioning creditors of an adequate opportunity to make their case.  QDos, supra.  In the

present case, Gauss has failed to provide any reasonable argument that could justify

granting the Motion.  As such, Petitioning Creditors contend that the Court should deny

the Motion, order Gauss to provide a list of his creditor as required by BKR 1003(b), and

set the matter for trial with a reasonable time for discovery.

> ### E. The Voluntary Dismissal of the Prior Consul Action Simply Confirms the Difficulty in Holding Gauss Accountable.

The voluntary dismissal of Consul's prior lawsuit simply confirms the difficulty of

holding an international criminal like Gauss accountable.  Consul simply could not get complete

jurisdiction over the fraud and assets in any one jurisdiction.  It was faced with having to bring

multiple lawsuits in several jurisdiction and by the time that could be accomplished Gauss had

1   dissipated the assets.  The only way to get jurisdiction over a ghost like Gauss is to get

2   jurisdiction over him personally.  A Chapter 7 Trustee can trace control of the assets and turn

3   Gauss over and shake him to see what hidden pocket the assets fall out of.  That is why

4   Petitioning Creditors filed this proceeding.  Gauss's careful and incomplete denials of the fraud

5   in this matter, confirms that he is aware of his precarious position in this case and ultimate

6   liability.

7

8                              IV.    **CONCLUSION.**

9           Based on the above, the Court should deny the Motion, order Gauss to provide a

10  list of his creditor as required by BKR 1003(b), and set the matter for trial with a

11  reasonable time for discovery.

12

13

14      Dated: February 5, 2021              LAW OFFICES OF ROBERT M. YASPAN

15

16                                          By  /s/ Robert M. Yaspan
                                                ROBERT M. YASPAN
17                                              Attorney for Debtor in Possession

18

19

20

21

22

23

24

25

26

27

28

                                          22

## PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is: 21700 Oxnard Street, Suite 1750, Woodland Hills, CA 91367.

A true and correct copy of the foregoing document entitled: PETITIONING CREDITORS' OPPOSITION TO ALLEGED DEBTOR'S MOTION TO DISMISS INVOLUNTARY PETITION AND AWARD FEES, COSTS AND SANCTIONS PURSUANT TO 11 U.S.C. § 303(i) will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On February 5, 2021, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

- **Matthew A Lesnick**    matt@lesnickprince.com, matt@ecf.inforuptcy.com;jmack@lesnickprince.com
- **United States Trustee (ND)**    ustpregion16.nd.ecf@usdoj.gov
- **Robert M Yaspan**    court@yaspanlaw.com, tmenachian@yaspanlaw.com

**2.  SERVED BY UNITED STATES MAIL**:  On February 5, 2021, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

Hon. Martin R. Barash
United States Bankruptcy Court
Central District of California
21041 Burbank Boulevard, Suite 342 / Courtroom 303
Woodland Hills, CA 91367

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) _____, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| February 5, 2021 | Tatyana Menachian | |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.